UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN A. FLORIO,<br><br>              Plaintiff,<br><br>       v.<br><br>COMMONWEALTH OF MASSACHUSETTS, GOVERNOR CHARLES D. BAKER, individually and in his official capacity, MARYLOU SUDDERS, individually and in her capacity as Secretary of Health and Human Services, CATHERINE STARR, individually and in her capacity as Secretariat Human Resources Officer, and ERICA CRYSTAL, individually and in her capacity as Executive Office of Health of Human Services Labor Relations Director and Deputy General Counsel for the Commonwealth of Massachusetts,<br><br>              Defendants. | Civil Action No. 1:21-cv-10665-IT |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

MAURA HEALEY
ATTORNEY GENERAL

Kendra Kinscherf (BBO No. 670479)
Eric Martignetti (BBO No. 678377)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2888, 617-963-2314
kendra.kinscherf@mass.gov
eric.martignetti@mass.gov

Dated: August 17, 2021

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ...................................................................................1

ARGUMENT ..........................................................................................................3

I.     STANDARD OF REVIEW ...........................................................................4

II.    PLAINTIFF'S CLAIMS AGAINST THE COMMONWEALTH AND THE INDIVIDUAL
       DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE
       ELEVENTH AMENDMENT.........................................................................5

       A.    The Commonwealth's Interest in Maintaining Its Sovereign Immunity
             Demands that the Court Address and Resolve the Eleventh Amendment Issue
             before Reaching the Merits of Plaintiff's Claims. ....................................... 6

       B.    Plaintiff's Allegations Are Insufficient to Establish Jurisdiction. ............... 7

             1.    Plaintiff's Claims against the Commonwealth, Regardless of the
                   Relief Sought, Are Barred by the Eleventh Amendment........................... 7

             2.    Plaintiff's Claims Seeking Monetary Relief from the Individual
                   Defendants in their Official Capacity Are Barred by the Eleventh
                   Amendment.............................................................................................. 8

             3.    Plaintiff's Claims Seeking Injunctive Relief Are for Past Alleged
                   Harms, Which Are Barred by the Eleventh Amendment. ......................... 9

             4.    Plaintiff's State Law Claims Are Barred under *Pennhurst*...................... 11

III.   PLAINTIFF'S PERSONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
       MUST BE DISMISSED ...............................................................................11

       A.    Plaintiff's Due Process Claims (Counts 4 and 6) Fail because He Was Not
             Deprived of any Property Rights and the Pre-termination Investigation Meets
             Due Process Requirements. ...................................................................... 12

             1.    By Statute, Plaintiff's Position as Commissioner Was Not
                   Guaranteed. ............................................................................................ 12

             2.    The Investigations of Plaintiff Met Due Process Requirements. .............. 14

             3.    Plaintiff's MCRA Due Process Claim also Fails because the
                   Defendants Did Not Threaten, Intimidate, or Coerce Plaintiff. ............... 17

i

B.    Plaintiff's Claims Alleging Violation of His Freedom of Association Rights
(Counts 4 and 5) Fail because Membership in a Fraternity Is Not Protected by
either the Federal or Massachusetts Constitution. ...................................................... 19

C.    The Individual Defendants Are Entitled to Qualified Immunity on Plaintiff's
Section 1983 and MCRA claims................................................................................... 22

D.    Plaintiff's Remaining Claims Fail Because He Does Not Allege Facts
Sufficient to Demonstrate that Defendants Violated Any State Laws........................ 25

    1.    Plaintiff's Claim for Wrongful Termination against Public Policy
    (Count 1) Must Be Dismissed Because the Individual Defendants
    Did Not Employ Plaintiff. ......................................................................... 26

    2.    Plaintiff's Claim for Tortious Interference with an Advantageous
    Relationship (Count 7) Should Be Dismissed Because Plaintiff
    Fails to Allege Defendants Acted with Malice. ........................................ 27

    3.    Plaintiff's Freestanding Massachusetts Constitutional Claims
    (Counts 2 and 3) Should Be Dismissed Because the Declaration of
    Rights Does Not Provide for a Private Right of Action............................. 28

E.    Plaintiff's Claims against the Governor (Counts 1, 2, 3, 5, and 6) Must Be
Dismissed Because Plaintiff Does Not Allege the Governor Was Involved in
Any Wrongful Conduct................................................................................................ 28

CONCLUSION .............................................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 5

*Barry v. Moran*, 661 F.3d 696 (1st Cir.) ....................................................................... 20, 21

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) ................. 21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5

*Bishop v. Wood*, 426 U.S. 341 (1976) ................................................................................. 13

*Blackstone v. Cashman*, 448 Mass. 255 (2007) ................................................................... 27

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) .......................................... 5

*Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26 (1st Cir. 2020)... 7

*Brait Builders Corp. v. Mass. Div. of Capital Asset Mgmt.*, 644 F.3d 5 (1st Cir. 2011) ............. 7

*Burton v. Littleton*, 426 F.3d 9 (1st Cir. 2005) ................................................................. 16

*Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y.*, 502 F.3d 136 (2nd Cir. 2007) ............................................................................................................. 21, 22, 24

*Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658 (1st Cir. 2010) ............. 8

*DeRose v. Putnam Mgmt. Co.*, 398 Mass. 205 (1986) ........................................................ 26

*Derrig v. Wal–Mart Stores, Inc.*, 942 F. Supp. 49 (D. Mass. 1996). ................................ 13, 25

*Diaz-Bigio v. Santini*, 652 F.3d 45 (1st Cir. 2011) ........................................................ 23, 25

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ....................................................... 23

*Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52 (2018) ...................................... 28

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................................... 9

*Eves v. LePage*, 927 F.3d 575 (1st Cir. 2019) (en banc) ................................................ 23, 24

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ 9, 10, 11

*Fox v. Town of Framingham*, 2016 WL 4771057 (D. Mass. 2016) .................................... 19

*French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128 (D. Mass. 1998) ............................ 18

*Gilbert v. Homar*, 520 U.S. 924 (1997) ............................................................................. 14

*Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981) ...................................................... 27

*Green v. Mansour*, 474 U.S. 64 (1985) .............................................................................. 9

*Hafer v. Melo*, 502 U.S. 21 (1991) .................................................................................... 8

*Harrison v. NetCentric Corp.*, 433 Mass. 465 (2001) ....................................................... 27

*Haufler v. Zotos*, 446 Mass. 489 (2006) ............................................................................ 18

*Hobson v. McLean Hosp. Corp.*, 402 Mass. 413 (1988) .................................................... 26

*Horne v. City of Boston*, 509 F. Supp. 2d 97 (D. Mass. 2007) ......................................... 19

*Kelley v. LaForce*, 288 F.3d 1 (1st Cir. 2002) ................................................................. 17

*King v. Driscoll*, 418 Mass. 576 (1994) ............................................................................ 26

*Lane v. Celucci*, 804 F. Supp. 400 (D. Mass. 1992). ........................................................ 17

*Lopez v. Massachusetts*, 588 F.3d 69 (1st Cir. 2009) ...................................................... 11

*Martino v. Hogan*, 37 Mass. App. Ct. 710 (1994) ............................................................ 28

*Maysonet–Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003) ............................................ 6, 8

*Meuse v. Freeh*, 421 F. Supp. 2d 365 (D. Mass. 2006) .................................................... 26

*Meuser v. Fed. Express Corp.*, 524 F. Supp. 2d 142 (D. Mass. 2007) ............................. 18

*Mills v. State of Me.*, 118 F.3d 37 (1st Cir. 1997) ......................................................... 4, 6

*Mullenix v. Luna*, 577 U.S. 7 (2015) ................................................................................. 25

*O'Brien v. Mass. Bay Transp. Auth.*, 162 F.3d 40 (1st Cir. 1998) ................................... 11

*O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000) .................................................................. 13

iii

*O'Rourke v. Hampshire Council of Governments*, 121 F. Supp. 3d 264 (D. Mass. 2015)........... 13

*Panozzo v. Rhoads*, 905 F.2d 135 (7th Cir. 1990) ...................................................................... 15

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................................... 10

*Parker v. Town of N. Brookfield*, 68 Mass. App. Ct. 235 (2007) ................................................ 26

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................................. 23

*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (2011) .............................................................. 5

*Penate v. Hanchett*, 944 F.3d 358 (1st Cir. 2019) ...................................................................... 23

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................... 4, 6, 7, 9, 11

*Perkins v. Board of Dirs.*, 686 F.2d 49 (1st Cir. 1982)........................................................... 12, 13

*Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435 (3d Cir. 2000) ........... 22, 24

*Poirier v. Mass. Dep't of Correction*, 558 F.3d 92 (1st Cir. 2009) ............................................. 20

*Pollard v. Georgetown School District*, 132 F. Supp. 3d 208 (D. Mass. 2015) ............... 22, 22, 29

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)...... 6, 7, 9, 10

*Quern v. Jordan*, 440 U.S. 332 (1970) ........................................................................................ 8

*Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010) ....................................................................... 23

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) ........................................................... 6

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ..................................................................... 20, 21

*Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1 (1st Cir. 2013) ........................................ 23

*Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230 (1st Cir. 2002)................................................. 8, 9

*Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76 (1st Cir. 2008)................................................... 5

*Saltzman v. Hanson*, 935 F. Supp. 2d 328 (D. Mass. 2013) ................................................. 14, 15

*Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996) ..................................................................... 9

*Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145 (1989) ...... 27

*Thomas v. Harrington*, 909 F.3d 483 (1st Cir. 2018) ...................................................... 17, 18, 19

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ..................................................... 26

*URI Student Senate v. Town of Narragansett*, 631 F.3d 1 (1st Cir. 2011) .................................. 20

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358 (1st Cir. 2001) ........................................................ 5

*Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002)........................... 10

*Webster v. Motorola, Inc.*, 418 Mass. 425 (1994) ..................................................................... 18

*Whalen v. Massachusetts Trial Court*, 397 F.3d 19 (1st Cir. 2005) ..................................... passim

*Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92 (1st Cir. 2002) ..................... passim

*World Gym, Inc. v. Baker*, 474 F.Supp.3d 426 (D. Mass. 2020) ............................................ 8, 10

**Statutes**

M.G.L. c. 12, § 11H.................................................................................................................. 17

M.G.L. c. 31, § 41.................................................................................................................... 13

M.G.L. c. 6, § 193........................................................................................................... 13, 18, 25

## INTRODUCTION

Plaintiff Steven A. Florio ("Plaintiff") was terminated from his position as Commissioner of the Massachusetts Commissioner for the Deaf and Hard of Hearing (the "Commission") after an investigation revealed that he engaged in multiple instances of discriminatory and harassing conduct against Commission employees.  Plaintiff, however, alleges that his termination was instead due to political fallout from his association with Kappa Gamma, a college fraternity, twenty-nine years ago.  Plaintiff claims Defendants' termination of him for such association violated his constitutional rights under both the federal and Massachusetts constitutions, was against public policy, and tortiously interfered with advantageous relations.  As set forth below, all of Plaintiff's claims should be dismissed, either pursuant to Fed. R. Civ. P 12(b)(1) on Eleventh Amendment grounds, or pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## FACTUAL ALLEGATIONS

Plaintiff was appointed as the Commissioner of the Commission and served in that role from February 19, 2019 until he was terminated on October 19, 2020 by Defendant Secretary of Health and Human Services Marylou Sudders.  *Id.* at ¶¶ 31, 69; Exhibit 1 (Termination Letter, cited in Am. Compl. ¶ 69).[1]

Twenty-nine years earlier, Plaintiff attended Gallaudet University, a prestigious university for the deaf and hard of hearing, where he was a member of the Kappa Gamma fraternity for one year – from April 1991 to Spring of 1992.  Am. Compl. ¶¶ 1, 41, 43.  Members of the fraternity, Plaintiff contends, were well known to have worn robes as part of their

---

[1] The Court may consider "documents the authenticity of which are not disputed by the parties; … official public records; … documents central to plaintiffs' claim; or … documents sufficiently referred to in the complaint" when evaluating a motion to dismiss.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (internal quotations and original alterations omitted).

ceremonial garb that resembled the regalia of the Ku Klux Klan and to have engaged in what Plaintiff calls the "Bellamy Salute," in which a person raises an extended right arm, an act that Plaintiff acknowledges resembles the Nazi salute.  *Id.* at ¶¶ 3, 45, 46, 58.

On June 5, 2020, a Gallaudet University yearbook photograph from 1990 was posted online by a blogger who claimed that it showed Plaintiff wearing the robes of Kappa Gamma while engaged in the Bellamy Salute.  *Id.* at ¶¶ 2-4, 50-51.  Although Plaintiff denied that he appeared in that photograph, the Deputy Legal Counsel for the Commission saw the blogger's post and the allegations were eventually forwarded to the Secretariat Legal Counsel for the Executive Office of Health and Human Services.  *Id.* at ¶¶ 50-52.

This spurred an investigation of Plaintiff.  *Id.* at ¶¶ 7, 66.  During the investigation, Plaintiff contends he was forced (over his resistance and objection) to apologize to the Commission's staff, employees, and community stakeholders for his participation in the Kappa Gamma fraternity.  *Id.* at ¶¶ 54, 55, 57.  Members of local unions, including a Commonwealth employees' union, took issue with Plaintiff's apology, characterizing him as having a "blasé attitude and dismissive response."  *Id.* at ¶ 59.  Nonetheless, the Defendants did not terminate Plaintiff for either his participation in Kappa Gamma or for his response.  *Id.* at ¶ 69; Exhibit 1 (Termination Letter, cited in Am. Compl. ¶ 69).

In the course of this initial investigation, however, something else happened that would ultimately result in Secretary Sudders's decision to terminate Plaintiff.  A number of Commission employees came forward to complain not about Plaintiff's membership in a college fraternity, but about Plaintiff's role in creating a hostile and discriminatory workplace at the Commission.  Am. Compl. ¶¶ 63, 67, 69; Exhibit 1 (Termination Letter, cited in Am. Compl. ¶ 69); Exhibit 2 (COE Report, cited in Am. Compl. ¶ 67).  The employees' complaints resulted in a second investigation of Plaintiff, one completely unrelated to his Kappa Gamma membership.

Am. Compl. ¶ 63.  This second investigation was conducted by the Center of Expertise ("COE"),

a specialized unit of the Commonwealth's Human Resources Division,[2] and it focused

exclusively on the new, serious allegations of Plaintiff's discriminatory conduct.  *Id.* at ¶ 67.

COE investigated Plaintiff and substantiated many of the allegations leveled against

Plaintiff by Commission employees.  Exhibit 2 (COE Report, cited in Am. Compl. ¶ 67).  COE

concluded that Plaintiff "engaged in discrimination based on race, gender, and disability in

violation of Executive Order No. 526," that such discrimination and harassment constituted a

"widescale pattern," and that it "created a hostile work environment."  *Id.* at 1, 33.  Although

Plaintiff characterizes the results of this second investigation as pretextual and the product of

"manipulated, misleading, biased and fabricated internal complaints" from Commission

employees, ultimately, Plaintiff was terminated based on the finding by the COE that he had

discriminated against his employees and created a hostile workplace, not because of his fraternity

membership.  Am. Compl. ¶¶ 69-70; Exhibit 1 (Termination Letter, cited in Am. Compl. ¶ 69).

## ARGUMENT

Plaintiff brings seven claims against the Defendants, alleging violations of federal and

state law, for which he seeks both injunctive relief and monetary damages.  All of Plaintiff's

claims against the Commonwealth and the individual Defendants in their official capacities

should be dismissed because they are jurisdictionally barred by the Eleventh Amendment.

The Court also should dismiss the claims against the individual Defendants in their

personal capacities because: (1) Plaintiff fails to state a claim under Section 1983 and the

Massachusetts Civil Rights Act ("MCRA") for violation of his due process rights (Counts

---

[2] The Human Resources Division is part of the Executive Office for Administration and Finance.
M.G.L. c. 7, § 4A.  As a result, it is a separate executive entity distinct from both the Executive
Office of Health and Human Services and the Commission.  M.G.L. c. 6A, §§ 2, 16.

4 and 6) where he had no protected property interest in continued employment as the Commissioner, he was given sufficient due process, and he does not plausibly allege Defendants threatened, intimidated, or coerced him within the meaning of the MCRA; (2) Plaintiff fails to state a claim under Section 1983 and the MCRA for violation of his freedom of association rights (Counts 4 and 5) because his relationship with Kappa Gamma is not protected by the First Amendment; (3) Defendants are entitled to qualified immunity on Plaintiff's Section 1983 and MCRA claims (Counts 4, 5, and 6); (4) Plaintiff's Massachusetts constitutional claims (Counts 2 and 3) fail because there is no private right of action created by the Massachusetts Declaration of Rights; (5) Plaintiff's claim for tortious interference with an advantageous relationship (Count 7) fails because he does not plausibly allege Defendants acted with actual malice; (6) Plaintiff's claim for wrongful termination against public policy (Count 1) fails because the individual Defendants were not his employer; and (7) all claims against the Governor (Counts 1, 2, 3, 5, and 6) fail because Plaintiff does not allege the Governor was involved in any wrongful conduct.

## I.      STANDARD OF REVIEW

As a threshold matter, Plaintiff's claims against the Commonwealth and the Defendants in their official capacities are barred by the immunity provisions of the Eleventh Amendment, and as such, this Court lacks jurisdiction to entertain such claims.  Because an Eleventh Amendment defense goes to this Court's jurisdiction, it is properly resolved pursuant to the standards of Fed. R. Civ. P. 12(b)(1).  *Mills v. State of Me.*, 118 F.3d 37, 41 (1st Cir. 1997) (reviewing Eleventh Amendment challenge under Rule 12(b)(1)).  Under Rule 12(b)(1), Defendants can challenge jurisdiction by challenging the pleadings on their face.  Such a facial attack accepts the Plaintiff's "version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction."  *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363

(1st Cir. 2001).  In performing this task, the Court credits only Plaintiff's well-pleaded "factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw[s] all reasonable inferences from them in [Plaintiff's] favor, and dispose[s] of the challenge accordingly."  *Id.*

Additionally, Plaintiff's claims fail to state a claim under Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating whether a plaintiff has met this burden, we accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor."  *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020).  However, the grounds of entitlement to relief set forth in the complaint must constitute "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Conclusory or "threadbare" allegations, "naked assertion[s]" devoid of "further factual enhancement," speculation, "bald assertions, and unsupportable conclusions" also should be disregarded.  *Id.* at 557; *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (2011).  Thus, Plaintiff must do more than demonstrate "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  Dismissal is appropriate if Plaintiff's well-pleaded facts do not "possess enough heft to show that [P]laintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted).

## II.  PLAINTIFF'S CLAIMS AGAINST THE COMMONWEALTH AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment of the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Long interpreted as an affirmation of state sovereign immunity[,] ... [the] amendment (despite its literal text) also bar[s] a citizen from bringing a federal court action against his or her own State," *Maysonet–Robles v. Cabrero*, 323 F.3d 43, 48 (1st Cir. 2003) (citation and footnote omitted), including all instrumentalities of the state, such as state agencies, *see Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997), or state officials sued in their official capacities, *see Mills*, 118 F.3d at 54. The Eleventh Amendment, therefore, generally guarantees that "non-consenting States may not be sued by private individuals in federal court." *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.... [T]his jurisdictional bar applies regardless of the nature of the relief sought."). None of the Defendants consent to this action and, as a result, all of the claims against the Commonwealth and the individual Defendants in their official capacity should be dismissed under Rule 12(b)(1) for the reasons set forth below.

### A. The Commonwealth's Interest in Maintaining Its Sovereign Immunity Demands that the Court Address and Resolve the Eleventh Amendment Issue before Reaching the Merits of Plaintiff's Claims.

The Eleventh Amendment affords the Commonwealth with an "immunity from suit," not merely a defense to litigation. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Because "a motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a fundamental constitutional protection," *id.*, one that impacts not only the Court's very ability to exert jurisdiction over the case but also its ability to hale the Commonwealth into Court at all, *Brait Builders Corp. v. Massachusetts Div. of Capital*

*Asset Mgmt.*, 644 F.3d 5, 10-11 (1st Cir. 2011), the Court should address this issue before reaching the merits of Plaintiff's claims.  Indeed, the "value to the States of their Eleventh Amendment immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice." *Puerto Rico Aqueduct*, 506 U.S. at 144.  Deferring the resolution of the Eleventh Amendment question would effectively vitiate the Commonwealth's sovereign immunity.  *Id.*  The Court should therefore issue a ruling one way or the other on this threshold issue.[3]

## B.  Plaintiff's Allegations Are Insufficient to Establish Jurisdiction.

Plaintiff brings claims for which he seeks money damages and injunctive relief against the Commonwealth and the individual Defendants in their official capacities, but the Eleventh Amendment forecloses these claims.[4]

### 1.  Plaintiff's Claims against the Commonwealth, Regardless of the Relief Sought, Are Barred by the Eleventh Amendment.

All claims against the Commonwealth are clearly barred.  *Pennhurst*, 465 U.S. at 100. The Eleventh Amendment prohibits suing a state in federal court "regardless of the nature of the relief sought." *Id.*; *see also Brait Builders*, 644 F.3d at 11.  The only exceptions to this clear bar are cases in which the Commonwealth has consented to suit, has waived its immunity, or where Congress has unambiguously overridden it.  *Brait Builders*, 644 F.3d at 11.  The Commonwealth neither consents to this suit nor waives its immunity.  And Congress did not abrogate the

---

[3] The Court may only defer reaching the Eleventh Amendment question if it finds the question presents complex or difficult issues and "it is perfectly clear that the state entity will prevail on the merits." *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 14 (1st Cir. 2007); *see also Brait Builders Corp.*, 644 F.3d at 11; *Greenless v. Almond*, 277 F.3d 601, 607 (1st Cir. 2002).  Otherwise, the Court must reach and decide the Eleventh Amendment issue.  *Greenless*, 277 F.3d at 605-06.

[4] The Commonwealth is named as a Defendant in Counts 1 through 3; official capacity claims are asserted against individual Defendants in Counts 1 through 6.

Commonwealth's Eleventh Amendment immunity when enacting 42 U.S.C. § 1983, the only federal statute under which Plaintiff seeks relief.[5]  *Quern v. Jordan*, 440 U.S. 332, 345 (1970). Nor did (or could) Congress abrogate the Eleventh Amendment with respect to Plaintiff's claims under state law.  *World Gym, Inc. v. Baker*, 474 F.Supp.3d 426, 431 (D. Mass. 2020). Accordingly, all claims against the Commonwealth must be dismissed.

> ### 2. Plaintiff's Claims Seeking Monetary Relief from the Individual Defendants in their Official Capacity Are Barred by the Eleventh Amendment.

The Eleventh Amendment also generally bars claims against individuals named in their official capacity absent consent, waiver, or an exception.  *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010); *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002).  This is "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official …"  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  "Suits against state officials in their official capacity therefore should be treated as suits against the State."  *Id.*  The individual Defendants neither consent to this suit nor waive their sovereign immunity protection.  And no exception exists for any of the relief Plaintiff seeks.

Without question, all claims for money damages against the individual Defendants in their official capacities are barred.  *Maysonet-Robles*, 323 F.3d at 48-49 (explaining that Eleventh Amendment bars "suits against state agents and instrumentalities when the action is in essence one for the recovery of money from the State."); *Whalen v. Massachusetts Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005) ("the Eleventh Amendment bars monetary awards against the [state agency] itself"); *Coggeshall*, 604 F.3d at 662 (for individuals "sued in their official capacities, they stand in the shoes of the state and enjoy the same immunity" from claims for

---

[5] Plaintiff alleges violations of 42 U.S.C. § 1983 in Counts 5 (Freedom of Association) and 6 (Due Process); the remaining claims are all based on state law.

money damages).  Since any judgment would be paid from the state treasury, for Plaintiff's claims seeking money damages, the Commonwealth is deemed the real party and the officials are only nominal defendants.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  As a result, Plaintiff's claims for money damages against the Defendants in their official capacity must be dismissed.

### 3. Plaintiff's Claims Seeking Injunctive Relief Are for Past Alleged Harms, Which Are Barred by the Eleventh Amendment.

The Eleventh Amendment's bar also extends generally to claims for injunctive relief. *Pennhurst*, 465 U.S. at 101-02.  This broad grant of immunity from injunctive relief claims, however, "is subject to a well recognized exception memorialized in *Ex parte Young*," 209 U.S. 123, 159-60 (1908), which permits "federal courts, notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law."  *Rosie D. ex rel. John D.*, 310 F.3d at 234 (alteration in original, internal quotation marks omitted).  But this exception is "narrow."  *Puerto Rico Aqueduct*, 506 U.S. at 146.  The "pivotal question" under *Ex parte Young* is whether the relief sought by a plaintiff "serves directly to bring an end to a present violation of federal law."  *Whalen*, 397 F.3d at 29 (internal quotation marks omitted) (state employee's claim for restoration of retirement credit was not prospective; though employee sought "no monetary reward," and relief sought "would have only future impact on the state," it was barred because there was no "ongoing violation" of federal law); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) (*Ex parte Young* permits only "injunctive relief to prevent a continuing violation of federal law"); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996) (explaining that a federal suit against a state official can go forward, notwithstanding the Eleventh Amendment's jurisdictional bar, where the suit seeks "only prospective injunctive relief in order to end a continuing violation of federal law").  In other words, the *Ex parte Young* exception only allows federal courts to exercise jurisdiction over a suit in which

the plaintiff alleges *ongoing* violations of federal law; suits that seek redress for *past* wrongs are foreclosed by the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); *see also Puerto Rico Aqueduct*, 506 U.S. at 146 (noting that *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past.").

In determining whether Plaintiff's claims seeking injunctive relief are permitted under the narrow *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Plaintiff only seeks injunctive relief for Counts 4 through 6. Am. Compl. p. 12-23. Plaintiff brings Count 4 under the MCRA, so it is barred by the Eleventh Amendment regardless of whether Plaintiff seeks prospective relief. *World Gym, Inc.*, 474 F. Supp. 3d at 431. For Counts 5 and 6, brought under Section 1983 for alleged violation of Plaintiff's freedom of association and due process rights, it is clear from the Amended Complaint that he does not allege any ongoing violations of federal law. Instead, Plaintiff alleges that he was improperly investigated and terminated by the Defendants for his association with Kappa Gamma. Am. Compl., generally. More specifically, Plaintiff's allegations begin with a June 5, 2020 Facebook post and end with his termination on October 19, 2020. Am. Compl. ¶¶ 2-16. Accordingly, Plaintiff only seeks redress for alleged harms that took place in the past, which is not permitted under the narrow *Ex parte Young* exception.

A review of Plaintiff's requested injunctive relief compels the same result.[6] The only non-monetary relief that Plaintiff requests is a post-termination name-clearing hearing. Am. Comp. p. 23 (Request for Relief ¶ a). Putting aside the fact that Plaintiff has failed to state a claim for a violation of his freedom of association or due process rights, *see* sections III.A. and B., *infra.*, the name-

---

[6] Courts, however, caution that the *Ex parte Young* analysis should focus on the substance of the allegations rather than the specific relief sought. *Papasan*, 478 U.S. at 279.

clearing hearing would not result in the Defendants "conform[ing] their future conduct to the requirements of federal law." *Whalen*, 397 F.3d at 28.  It only would remedy a past alleged harm. Therefore, Plaintiff's claims for injunctive relief against the individual Defendants in their official capacities are also barred by the Eleventh Amendment.  *Id.* at 29-30.

### 4.  Plaintiff's State Law Claims Are Barred under *Pennhurst*.

Finally, regardless of the type of relief sought, Plaintiff's state law claims against all of the individual state officials are barred.  *Pennhurst*, 465 U.S. at 106.  The Eleventh Amendment prohibits claims in federal court against state officials based on alleged violations of state law. *Id.*  As the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."  *Id.*  The Court thus held that the narrow exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123 (1908), is "inapplicable in a suit against state officials on the basis of state law."  *Pennhurst*, 465 U.S. at 106.  The Court also held that the doctrine applies as readily to "state-law claims brought into federal court under pendent jurisdiction."  *Id.* at 121; *see also Lopez v. Massachusetts*, 588 F.3d 69, 73 n. 1 (1st Cir. 2009); *O'Brien v. Mass. Bay Transp. Auth.*, 162 F.3d 40, 44 (1st Cir. 1998).  This Court therefore lacks jurisdiction over state law claims (Counts 1 through 4 and 7).

## III.   PLAINTIFF'S PERSONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED

Plaintiff's claims against the Defendants in their individual capacity fare no better.[7]  As set forth below, even accepting all of the facts alleged as true for purposes of this motion and

---

[7] The arguments set forth in this section would apply with equal force to Plaintiff's claims against the Commonwealth and the Defendants named in their official capacity should the Court bypass the Eleventh Amendment issues.  *But see* n.3, *supra*.

making all inferences in favor of Plaintiff, he has failed to state any claims entitling him to relief. Accordingly, all personal claims against the individual Defendants must also be dismissed pursuant to Rule 12(b)(6).

**A.      Plaintiff's Due Process Claims (Counts 4 and 6) Fail because He Was Not Deprived of any Property Rights and the Pre-termination Investigation Meets Due Process Requirements.**

In Counts 4 and 6 of his Amended Complaint, Plaintiff asserts claims pursuant to the MCRA (Count 4) and Section 1983 (Count 6) for alleged violation of his due process rights. Am. Compl. ¶¶ 103-07, 117-25.  For both claims, Plaintiff alleges that he requested, but was denied, the ability to be represented by counsel during the investigatory process, information regarding allegations made against him, a pre-termination hearing, and a post-termination "name clearing hearing."  *Id.* at ¶¶ 122.

However, in order to maintain a due process claim, Plaintiff must prove two elements: (1) that he had a constitutionally-protected property right; and (2) Defendants deprived him of that right without the minimum amount of process required by the constitution.  *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 101-02 (1st Cir. 2002).  The allegations in the Amended Complaint and state law governing his position demonstrate that Plaintiff cannot meet this burden.

**1.  By Statute, Plaintiff's Position as Commissioner Was Not Guaranteed.**

Plaintiff, as a public employee, had a property interest arising from his employment only if he can "demonstrate that he [had] a reasonable expectation, arising out of a statute, policy, rule, or contract, that he [would] continue to be employed."  *Id.* at 101 (citing *Perkins v. Board of Dirs.*, 686 F.2d 49, 51 (1st Cir. 1982)).  Whether a public employee such as Plaintiff has a protected property interest in continued employment is determined "by reference to state law."  *Id.* at 102 (quoting *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).  Although Plaintiff alleges that

"as an executive level state employee, [he] had a protected property interest in employment,"[8] Am. Comp. ¶ 119, he is incorrect as a matter of law.

Under Massachusetts law, tenured public employees cannot be discharged "[e]xcept for just cause…" M.G.L. c. 31, § 41. Courts have ruled that such a "just cause" termination requirement gives rise to a protected property right. *See, e.g.*, *Whalen*, 397 F.3d at 24; *Wojcik*, 300 F.3d at 102; *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000); *Perkins*, 686 F.2d at 51 ("[O]ne who can be removed only for 'cause' has a constitutionally protected 'property' interest, while one whose job is held 'at will' does not."). However, as the Commissioner of the Commission, the provisions of Chapter 31 – the Civil Service statute for public employees – explicitly do *not* apply to Plaintiff. M.G.L. c. 6, § 193 ("The provisions of chapter thirty-one shall not apply to the office of commissioner or of any deputy commissioner, assistant to the commissioner, assistant commissioner, director or regional director or other employees as the commissioner may appoint."). The statute governing Plaintiff's appointment is entirely silent on both the term of his appointment and the procedure for his removal. *Id.* Further, Plaintiff does not allege that there were any policies, rules, or contracts which altered the statutory conditions of his employment. *See* Am. Compl., generally. Absent any statute, policy or contract indicating otherwise, "Massachusetts law assumes at-will employment." *Derrig v. Wal–Mart Stores, Inc.*, 942 F. Supp. 49, 54 (D. Mass. 1996). Plaintiff "does not have a constitutionally protected property interest in their employment by default." *O'Rourke v. Hampshire Council of Governments*, 121 F. Supp. 3d 264, 270 (D. Mass. 2015). Accordingly, Plaintiff did not have a protected property interest in continued employment and his due process claims fail.

---

[8] Because this allegation is merely "a legal conclusion couched as a factual allegation," a court is not bound to accept it as true. *Ashcroft*, 556 U.S. at 678.

### 2.   The Investigations of Plaintiff Met Due Process Requirements.

Even though Plaintiff did not have a protected property interest in his continued

employment as an appointed official, Plaintiff was provided with constitutionally sufficient due

process.  Due process only requires "some kind of hearing and some pretermination opportunity

to respond" prior to termination.  *Wojcik*, 300 F.3d at 101-102 (internal quotations and citations

omitted).   "[T]he requisite procedures need not be elaborate, and the opportunity to hear and

respond to the employer's reasons [can] be accomplished either in writing or in an informal face-

to-face meeting."  *Whalen*, 397 F.3d at 26.  "The pre-termination process 'need only include oral

or written notice of the charges, an explanation of the employer's evidence and an opportunity

for the employee to tell his side of the story.'"  *Saltzman v. Hanson*, 935 F. Supp. 2d 328, 342

(D. Mass. 2013) (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)).

Plaintiff concedes that, as part of the two investigations, he met with the individual

Defendants at least fifteen times.  Am. Compl. ¶¶ 66-68.  Plaintiff was aware that the first

investigation, "focused on Kappa Gamma and [his] June 22 apology and disavowal meetings."

Am. Compl. ¶ 66.  Although Plaintiff alleges that his lawyer was not allowed to speak during the

meetings, he does not allege that he was not given the opportunity to respond to the allegations

against him.  *Id.*  Plaintiff also was interviewed as part of the second COE investigation, given

the opportunity to respond to the allegations against him,[9] and allowed to submit multiple

documents and web links to the COE investigator after his interview.  Exhibit 2 (COE Report,

cited in Am. Compl. ¶ 67).  Further, the COE process was independent as the COE is part of a

different division of the Executive Department and the investigator was not an employee of the

---

[9] Although Plaintiff alleges he only recently learned about two additional complaints, as even he
concedes, the investigation dismissed those complaints.  Am. Compl. ¶ 71.  Plaintiff did not
suffer any adverse action based on the two complaints, so they cannot serve as the basis for any
of his claims.

Commission.  *See* n.2, *supra*.  As a result, the COE process lacked any potential bias that might interfere with due process.  *See Saltzman*, 935 F. Supp. 2d at 341 (though impartiality is not required, severe bias may interfere with due process).  Plaintiff therefore received constitutionally adequate due process.

Plaintiff's specific complaints of alleged due process violations do not suggest a contrary conclusion.  Plaintiff first alleges that that he was denied legal counsel during the COE process.  Am. Compl. ¶¶ 99, 122.  But Plaintiff's due process rights do not include right to counsel.  *Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir. 1990) ("[A]n employee has no constitutional right to counsel at a pre-termination hearing.").

Second, Plaintiff alleges that the individual Defendants "fail[ed] to disclose the allegations against him" or provide a pre-termination hearing.  Am. Compl. ¶¶ 99, 122.  But the COE Report demonstrates that this is false – the report is organized by each allegation made against him that was considered by the COE,[10] outlines the substance of the particular allegation, and then includes Plaintiff's response to each.  Exhibit 2 (COE Report, cited in Am. Compl. ¶ 67).  This meets the minimum due process requirements of providing oral notice of the allegations and an opportunity for Plaintiff to tell his side of the story.  *Saltzman*, 935 F. Supp. 2d at 342.

Finally, Plaintiff claims he was entitled to a post-termination name-clearing hearing.  Am. Compl. ¶¶ 99, 122.  Such a hearing, however, is only required where "a public employer's decision to discharge an employee may damage the employee's reputation to such an extent that

---

[10] As noted in the report, certain allegations were not considered by the COE because insufficient information was provided.  Exhibit 2 at p. 4.

his liberty to seek another job is significantly impaired."[11]  *Burton v. Littleton*, 426 F.3d 9, 14

(1st Cir. 2005) (internal quotations and citation omitted).  More significantly, "neither the

termination of employment nor statements that might be characterized as defamatory are, by

themselves, sufficient to implicate the liberty interest…"  *Id.*  Instead, Plaintiff must demonstrate

that the Defendants "create[d] and disseminate[d] a false and defamatory impression about

[Plaintiff] in connection with [his] discharge."  *Id.* at 15.  Only then does due process require

post-termination name clearing required.  *Id.*; *see also Wojcik*, 300 F.3d at 103.

     To state a due process claim for the deprivation of such a liberty interest, Plaintiff must

satisfy five elements.  *Wojcik*, 300 F.3d at 103.  "First, the alleged statements must level a charge

against the employee that might seriously damage his standing and associations in his

community and place his good name, reputation, honor, or integrity at stake."  *Id.*  "Second, the

employee must dispute the charges made against him as false."  *Id.*  "Third, the stigmatizing

statements or charges must have been intentionally publicized by the government."  *Id.*  "Fourth,

the stigmatizing statements must have been made in conjunction with an alteration of the

employee's legal status, such as the termination of his employment."  *Id.*  "Finally, the

government must have failed to comply with the employee's request for an adequate name-

clearing opportunity."  *Id.*  Plaintiff cannot satisfy the third element.

     Plaintiff has not alleged with any specificity that any of the individual Defendants

intentionally publicized any stigmatizing statements or charges about Plaintiff.  Am. Compl.,

generally.  Plaintiff fails to identify what the statements were, what Defendants allegedly were

involved in their release, or where they were released.  *Id.*  Instead, Plaintiff alleges that "the

---

[11] Although Plaintiff failed to specifically claim a deprivation of liberty interests, Defendants
nonetheless address this since it is reasonably inferred from the allegations in the Amended
Complaint.

defendants released public statements which implied that [he] had committed racist, anti-Semitic and/or discriminatory acts while employed by the defendants…"[12] Am. Compl. ¶¶ 100, 123. This is insufficient to survive a motion to dismiss. *Lane v. Celucci*, 804 F. Supp. 400, 403 (D. Mass. 1992).

### 3. Plaintiff's MCRA Due Process Claim also Fails because the Defendants Did Not Threaten, Intimidate, or Coerce Plaintiff.

While the MCRA is generally "co-extensive with § 1983," it has an additional hurdle that Plaintiff must clear – he must prove that Defendants violated his due process rights "by threats, intimidation, or coercion" and that such actions "cause[d] the [P]laintiff to give up something that [he] has the constitutional right to do." *Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018); *see also Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir. 2002); M.G.L. c. 12, § 11H. In his Amended Complaint, Plaintiff alleges the following actions violated the MCRA: (a) questioning Plaintiff about his association with Kappa Gamma; (b) requiring him to produce documentation about such association; (c) requiring him to draft a statement disavowing his association with Kappa Gamma; (d) requiring him to read that statement; (e) Defendants drafted a statement repudiating Plaintiff's association with Kappa Gamma and requiring him to read it to staff; (f) requiring him to remove references to Kappa Gamma on his LinkedIn profile; (g) Defendants solicited complaints about Plaintiff; (h) Defendants denied Plaintiff legal representation or due process; (i) Defendants conducted a biased and pretextual investigation; (j) suspending Plaintiff; and (k) terminating Plaintiff. Am. Compl. ¶ 105. None of these allegations amount to "threats,

---

[12] For all other allegations of stigmatizing public statements – a blogger's Facebook post and the Boston Globe's publication of a letter by the local union – Plaintiff does not allege that Defendants were responsible for their release. Am. Compl. ¶¶ 2, 14, 61. These publications therefore cannot be the basis for a claim against the defendants. *See Wojcik*, 300 F.3d 92 at 103-104 (defamatory statements of newspaper reporters who incorrectly drew a connection between the disappearance of lottery tickets and plaintiff's suspension and subsequent termination were not statements made by defendants).

intimidation, or coercion."

> Under the MCRA,
>
> a threat consists of the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.... Intimidation involves putting in fear for the purpose of compelling or deterring conduct.... Coercion is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

*Meuser v. Fed. Express Corp.*, 524 F. Supp. 2d 142, 148 (D. Mass. 2007) *aff'd*, 564 F.3d 507

(1st Cir. 2009) (quoting *Haufler v. Zotos*, 446 Mass. 489, 845 N.E.2d 322, 335 (2006)).

However, "courts have been concerned about the application of MCRA in the workplace, where

some amount of friction, unpleasantness, and even occasional shouting, is not unusual." *Meuser*,

524 F. Supp. 2d at 148. As a result, although "an earlier requirement for some physical

confrontation underlying" a MCRA claim has been "relaxed, the exception for claims based on

non-physical coercion remains a narrow one." *Id.* at 147 (internal quotations and citations

omitted); *see also Thomas*, 909 F.3d at 492. To fall within this narrow exception, Plaintiff must

demonstrate "a pattern of harassment and intimidation." *Thomas*, 909 F.3d at 493 (citation

omitted).

> Plaintiff's allegations fall well short of a pattern of threats, intimidation, or coercion

necessary to state a claim under the MCRA. Even taking as true Plaintiff's allegation that

Sudders, Starr, and Crystal threatened his position as Commissioner of the Commission, such

alleged conduct does not constitute "a pattern of harassment and intimidation" and, in any event,

Plaintiff did not have the protections of the Civil Service statute and could be terminated at will.

*See* G.L. c. 6, § 193; *French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128, 133 (D. Mass. 1998)

("the potential loss of at-will employment [does] not constitute 'threats, intimidation or coercion'

within the meaning of the statute") (citing *Webster v. Motorola, Inc.*, 418 Mass. 425 (1994)).

Additionally, Plaintiff does not allege that any of the individual Defendants engaged in physical

force in requiring him to read the prepared statements, and therefore any alleged pressure with respect to his at-will position is insufficient to allege threats, intimidation, or coercion.  *See Horne v. City of Boston*, 509 F. Supp. 2d 97, 115 (D. Mass. 2007).  Finally, Plaintiff's claim that the prepared statements "portrayed him in a false light" and "reflected a misleadingly contrite admission" does not plausibly allege coercion.  *See id.* (defendants' complaints about the plaintiff's job performance, even if "deliberately false (as alleged)" did not amount to coercion).

Regardless, Plaintiff does not allege he gave up something that he has a constitutional right to do.  At most, Plaintiff alleges that he was forced to disavow his association with Kappa Gamma, was subject to investigations, and was terminated.  Am. Compl. at ¶ 105.  As set forth in Section III.B., *infra*, Plaintiff does not have a constitutional right to participate in or affiliate with a fraternity.  He also does not have (nor does Plaintiff claim to have) a constitutional right to be free from investigations in his workplace.  *See Thomas*, 909 F.3d at 492-93 (court did not review employer's investigation of plaintiff as part of his MCRA claim).  Finally, as discussed above, Plaintiff does not have any right – constitutional or otherwise – to continued employment. *See* Section III.A.1., *supra*; *see also Fox v. Town of Framingham*, 2016 WL 4771057, at *8 (D. Mass. 2016) ("there is no blanket constitutional right to continued employment").  As a result, Plaintiff's due process claim under the MCRA fails and must be dismissed.

### B.     Plaintiff's Claims Alleging Violation of His Freedom of Association Rights (Counts 4 and 5) Fail because Membership in a Fraternity Is Not Protected by either the Federal or Massachusetts Constitution.

Plaintiff asserts claims pursuant to the MCRA (Count 4) and Section 1983 (Count 5) for an alleged violation of his freedom of association rights.  Both the federal and state constitutions protect citizens' freedom to associate.  However, such constitutional protection is limited – the Supreme Court "has identified two types of 'freedom of association' that merit constitutional protection: (i) 'choices to enter into and maintain certain intimate human relationships' and (ii)

association 'for the purpose of engaging in those activities protected by the First Amendment.'"
*URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 12-13 (1st Cir. 2011) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-618 (1984)).  Plaintiff's claims do not fall within such limited categories and should be dismissed.

Plaintiff alleges that Defendants' actions have interfered with his First Amendment right to associate with Kappa Gamma, a college fraternity.[13]  Am. Compl. ¶¶ 1, 105, 111-13, 115. Fairly read, this falls within the first category – the "freedom of intimate association."[14]  *Roberts*, 468 U.S. at 618.  Plaintiff must therefore demonstrate that the federal or state constitution protects his association with the fraternity.  *See Barry v. Moran*, 661 F.3d 696, 699 (1st Cir. 2011) ("A successful claim that a public employer violated First Amendment rights through adverse employment decisions motivated by a plaintiff's associational choices requires some evidence that the association at issue is political or otherwise constitutionally protected.").

In determining whether Plaintiff's association with Kappa Gamma is constitutionally protected, "[t]he Supreme Court has identified several intimate associations that constitute fundamental rights …, including those that attend the creation and sustenance of a family— marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Poirier v. Mass. Dep't of Correction*, 558 F.3d 92, 95 (1st Cir. 2009) (citing *Roberts*, 468 U.S. at 618-620).  "Beyond this list of bright-line fundamental rights, the Court has explained that human relationships are arrayed on a spectrum from the most intimate to the most attenuated of

---

[13] Plaintiff, however, also alleges that he was only a member of Kappa Gamma for one year – until the Spring of 1992.  Am. Compl. ¶ 43; *see also id.* ¶¶ 1, 70, 79, 88, 111, 129 (stating that his association with Kappa Gamma was 29 years ago).  It is difficult to understand, therefore, how any actions by Defendants would interfere with his purported association rights after he was no longer a member.

[14] Plaintiff has not alleged any facts suggesting that he was associated with Kappa Gamma for the purpose of engaging in First Amendment protected activities, so his claim would not fall within the second category – "freedom of expressive association."  *Roberts*, 468 U.S. at 618.

personal attachments." *Id.* In determining whether, and to what extent, an association is protected by the constitution, "relevant factors for consideration include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." *Id.* The types of relationships that give rise to a constitutionally protected right are characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Roberts*, 468 U.S. at 620.

While certain intimate relationships may be constitutionally protected, neither the federal nor the state Constitution "protect a generic right to mix and mingle." *Barry*, 661 F.3d at 699. "Courts have thus found that social relationships like the ones alleged here are legally insufficient to be protected by the First Amendment." *Pollard v. Georgetown School District*, 132 F.Supp.3d 208, 225 (D. Mass. 2015) (internal quotations and citation omitted). For example, the Supreme Court has held that local Jaycees and Rotary Clubs are not the type of associational relationships entitled to constitutional protection because they are not small in size (having about 20 to 900 members per chapter), they regularly recruit new members, they are not overly selective in their admissions policies, members often move away, and they perform activities in public or invited the public to attend. *Roberts*, 468 U.S. at 621; *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545-47 (1987). Similarly, as parenthetically described in *Pollard*, numerous courts across the country have held that student associations and groups do not meet the requirements for an intimate association claim. *Pollard*, 132 F. Supp. 3d at 225 (and cases cited therein). That includes fraternities like Plaintiff's Kappa Gamma, notwithstanding the fact that fraternities have some selection process and seek to "foster personal, intimate relationships between its members." *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 145-47 (2nd Cir. 2007) ("Based on its size, level of selectivity, purpose, and inclusion of non-members, the Fraternity lacks the

21

characteristics that typify groups with strong claims to intimate association); *see also Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000) (holding that university chapter of Phi Lambda Phi "lack[ed] the essential characteristics of constitutionally protected intimate association" because of the fraternity's "size, lack of selectivity, and lack of seclusion in its activities") (cited with support in *Pollard*, 132 F. Supp. 3d at 225).

Based on the allegations in the Amended Complaint, Plaintiff's association with Kappa Gamma likewise is not entitled to constitutional protection. Kappa Gamma is not a small, private, intimate association, but a fairly large, non-exclusive, public fraternity. Specifically, Plaintiff alleges that: (1) "numerous" Gallaudet Presidents and University board members have been members of Kappa Gamma; (2) Kappa Gamma "has been known to be synonymous with Gallaudet"; and (3) Kappa Gamma "has historically served as a significant network for professionals and others who have worked on issues that affect the deaf and hard of hearing communities, nationally and internationally." Am. Compl. ¶¶ 44, 47. Plaintiff further alleges that he was a member of Kappa Gamma for only one year "over 29 years ago," *id.* at ¶¶ 70, 79, 88, 111, 129, suggesting that he (and other members) "cease[d] to associate regularly" with the fraternity after graduation, similar to the fraternity in *Chi Iota*. *Chi Iota*, 502 F.3d at 145. Based on these allegations, Kappa Gamma is not one of the "certain intimate or private relationships" protected by the First Amendment. *Rotary Int'l*, 481 U.S. at 545. As a result, Plaintiff's freedom of association claims (Counts 4 and 5) must be dismissed.

**C.      The Individual Defendants Are Entitled to Qualified Immunity on Plaintiff's Section 1983 and MCRA claims.**

Plaintiff's Section 1983 and MCRA claims against the individual Defendants in Counts 4

through 6 are also barred by the doctrine of qualified immunity.[15]  "Qualified immunity provides

defendant public officials 'an immunity from suit rather than a mere defense to liability.'"

*Penate v. Hanchett*, 944 F.3d 358, 365 (1st Cir. 2019) (citation omitted).  This doctrine shields

state officials from suit when their conduct did "not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*,

555 U.S. 223, 231 (2009); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)

(qualified immunity applies unless defendants "violated a federal statutory or constitutional right,

and … the unlawfulness of their conduct was 'clearly established at the time'").  The doctrine

"protects all but the plainly incompetent or those who knowingly violate the law."  *Diaz-Bigio v.*

*Santini*, 652 F.3d at 50 (1st Cir. 2011).  Courts follow a two-step inquiry in assessing a claim of

qualified immunity, considering: "(1) whether the facts alleged or shown by the plaintiff make

out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established'

at the time of the defendant's alleged violation."  *Rocket Learning, Inc. v. Rivera-Sanchez*, 715

F.3d 1, 8 (1st Cir. 2013) (citation omitted).  Plaintiff must satisfy "both prongs" of this test "to

overcome a qualified immunity defense," *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010),

and courts need not address both prongs if plaintiff fails to satisfy one, *see Eves v. LePage*, 927

F.3d 575, 584 (1st Cir. 2019) (en banc).

As explained above in sections III.A. and B. *supra*, Plaintiff fails to plausibly allege that

the individual Defendants violated any constitutional right.  Accordingly, Defendants are entitled

to qualified immunity under the first prong of the qualified immunity defense.  The Section 1983

---

[15] Qualified immunity can bar claims brought under Section 1983, *see Penate v. Hanchett*, 944 F.3d 358, 365 (1st Cir. 2019) (dismissing Section 1983 claim under qualified immunity), and the MCRA, *see ELM Med. Labs*, 33 Mass. App. Ct. at 76 ("in an action under the State Civil Rights Act, … qualified immunity is available to public officials performing discretionary functions").

and MCRA claims also fail under the second prong of the qualified immunity analysis.  Under the second prong, "the plaintiff must demonstrate that the law was sufficiently clear [such] that every reasonable official would understand that what he is doing is unlawful."  *Eves*, 927 F.3d at 583 (internal quotations and citations omitted; alteration in original).  This requires case law identifying the protected right with more than "a high level of generality"; instead, "clearly established law must define the right allegedly violated ... in a particularized sense so that the contours of the right are clear to a reasonable official."  *Id.* (same).  "Accordingly, although there need not be a case directly on point, ... existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (same).  Further, controlling precedent may be limited to existing Supreme Court law.  *Id.* ("The Supreme Court has "not yet decided what precedents -- other than [its] own -- qualify as controlling authority.").

Plaintiff first alleges Defendants have violated his right to associate with a fraternity.  As set forth above, there is no clearly established law that membership in a fraternity is protected by the federal or state constitution, much less a Supreme Court case holding the same.  The highest courts to have reviewed this issue – the Second and Third Circuits – have both concluded that membership in a fraternity is simply not protected by the constitution.  *Chi Iota*, 502 F.3d at 145-47; *Pi Lambda Phi*, 229 F.3d at 442.  As a result, even if Defendants terminated Plaintiff because of his association with Kappa Gamma, it could not have been clear to them that such action was unlawful.

Plaintiff also alleges that he was entitled to due process – a pre-termination hearing and a post-termination name clearing hearing – in connection with his termination.  As noted above, *see* section III.A.1., *supra*, due process is only required if Plaintiff demonstrates that he had a constitutionally protected property interest, which requires him to prove he had a reasonable expectation of continued employment.  Although Supreme Court precedent generally does

24

recognize this right, whether it applies in a specific case depends on state law.  *Wojcik*, 300 F.3d at 102.  For Plaintiff's position as Commissioner, it is not clearly established that he was entitled to continued employment because the Civil Service statute does not apply to him and, therefore, he was an at-will employee.  M.G.L. c. 6, § 193; *Derrig*, 942 F. Supp. at 54 ("Massachusetts law assumes at-will employment.").  As a result, it could not have been reasonably clear to Defendants that Plaintiff was entitled to either a pre- or post-termination hearing.  *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("Qualified immunity shields officials from civil liability" unless existing precedent clearly established "beyond debate" that the conduct was unlawful).

Because Plaintiff's rights to associate with Kappa Gamma and to receive due process were not clearly established under Supreme Court precedent, the individual Defendants are entitled to qualified immunity and all claims against them must be dismissed.  *See Whalen*, 397 F.3d at 28 ("In sum, because we believe an objectively reasonable official in the defendants' position would not necessarily have understood that his action violated the plaintiff's [due process] rights, we hold that the district court properly granted qualified immunity to the individual defendants."); *Diaz-Bigio*, 652 F.3d at 52 ("Under a long line of cases from this circuit granting qualified immunity, the defendants are entitled to summary judgment because . . . this case was not so clear as to put all reasonable officials on notice that firing [plaintiff] would violate the law.  Reasonable officials could well have concluded there was no First Amendment violation on these facts.").

### D.    Plaintiff's Remaining Claims Fail Because He Does Not Allege Facts Sufficient to Demonstrate that Defendants Violated Any State Laws.

The remainder of Plaintiff's claims are all based on purported violations of state law.  As an initial matter, if this Court dismisses the federal statutory claims under Section 1983 against the individual Defendants, it should decline to exercise jurisdiction over the remaining state law

claims, including the MCRA discussed above, and dismiss the remainder of this suit on that

basis.  *See Meuse v. Freeh*, 421 F. Supp. 2d 365, 371 (D. Mass. 2006) (parenthetically stating

that "needless decisions of state law should be avoided both as a matter of comity and to promote

justice between the parties by procuring for them a surer-footed reading of applicable law")

(citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  Additionally, the

Court may dismiss all state law claims because Plaintiff has not alleged any facts demonstrating

Defendants violated state law and because he has no private right of action under the

Massachusetts Declaration of Rights (Counts 2 and 3).

> **1.  Plaintiff's Claim for Wrongful Termination against Public Policy (Count 1) Must Be Dismissed Because the Individual Defendants Did Not Employ Plaintiff.**

Plaintiff's claim for wrongful termination in violation of public policy (Count 1) must be

dismissed against the two individual Defendants against whom this claim is asserted, Governor

Baker and Secretary Sudders.[16]  Although Massachusetts law permits liability to be "imposed on

an *employer* who terminates an at-will employee in violation of a clearly established public

policy," *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988) (emphasis added), such a

claim only extends to the employer itself.  *See Parker v. Town of N. Brookfield*, 68 Mass. App.

Ct. 235, 241 (2007) (considering claim of wrongful termination by an at-will municipal

employee against employer); *King v. Driscoll*, 418 Mass. 576, 581 (1994) (considering claim by

at-will employee against employer); *DeRose v. Putnam Mgmt. Co.*, 398 Mass. 205, 208 (1986)

(concluding that at-will employee terminated in violation of public policy may resort to the

courts for a remedy against employer).  Neither individual Defendant personally employed the

---

[16] The Complaint does not state whether this claim is asserted against Governor Baker and Secretary Sudders in their personal or official capacities.  To the extent that it is asserted against them in their official capacities, it is barred by the Eleventh Amendment.  *See* Section II.B., *supra*.

Plaintiff.  *See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass.

145, 151 & n.1 (1989) (in claim for wrongful termination against public policy, treating

individually-named defendant as an official-capacity claim against the employer).  Accordingly,

this claim must be dismissed to the extent it is asserted personally against these Defendants.

> **2.**  **Plaintiff's Claim for Tortious Interference with an Advantageous Relationship (Count 7) Should Be Dismissed Because Plaintiff Fails to Allege Defendants Acted with Malice.**

Plaintiff's claim for tortious interference with his employment against Defendants

Sudders, Starr, and Crystal (Count 7) fails because he does not plausibly allege that they acted

with actual malice.  For such a claim, Plaintiff must prove that (1) he had a contract or

advantageous relationship with a third party; (2) the defendant knowingly interfered with that

contract or relationship; (3) the defendant's interference, in addition to being intentional, was

improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

*Harrison v. NetCentric Corp.*, 433 Mass. 465, 476 (2001).  To demonstrate the high-ranking

Defendants acted with improper motive or means, Plaintiff also must show that they acted with

"malevolence" or "actual malice."  *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007).  This

requires Plaintiff to allege (and prove) that Defendants acted with "a spiteful, malignant purpose,

unrelated to the legitimate corporate interest."  *Id.* at 261 (citation omitted).  This high standard

exists because high-ranking officials acting "within the scope of their employment

responsibilities" are generally "privileged to act" as they see fit in managing their employees.  *Id.*

at 260; *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 663-665.

Nothing in Plaintiff's Amended Complaint suggests that any of the individual Defendants

acted with actual malice toward Plaintiff.  At most, Plaintiff alleges that he was terminated

because the Defendants were concerned that "it was no longer politically correct to employ him"

since the public associated Plaintiff with Nazi and Ku Klux Klan symbols.  Am. Compl. ¶¶ 3-14,

18.  A public agency's concerns about the public's opinion of the Commissioner certainly is legitimate.  As a result, Plaintiff cannot demonstrate that the Defendants acted with malice and Count 7 should be dismissed.

      **3.  Plaintiff's Freestanding Massachusetts Constitutional Claims (Counts 2 and 3) Should Be Dismissed Because the Declaration of Rights Does Not Provide for a Private Right of Action.**

Counts 2 and 3, which purport to assert freestanding civil rights claims under the Massachusetts Declaration of Rights, must be dismissed because there is generally no private right of action created by the Massachusetts Declaration of Rights.  Instead, Plaintiff must look to other statutory vehicles (like the MCRA) for a cause of action.  *See Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64 (2018) (rejecting claim where "complaint purports to assert its State constitutional claims directly under the Massachusetts Declaration of Rights, without reference to any statutory cause of action" because no private right of action generally exists under the Declaration of Rights itself); *Martino v. Hogan*, 37 Mass. App. Ct. 710, 720 (1994) (noting that the MCRA "occup[ies] the field" in constitutional civil rights litigation).[17] The Court therefore should dismiss Counts 2 and 3 of the Amended Complaint.

    **E.  Plaintiff's Claims against the Governor (Counts 1, 2, 3, 5, and 6) Must Be Dismissed Because Plaintiff Does Not Allege the Governor Was Involved in Any Wrongful Conduct.**

In addition to the reasons stated above, all of Plaintiff's claims against the Governor in his individual capacity must also be dismissed because the Plaintiff does not allege the Governor was involved in any purported wrongful conduct.  Beyond alleging that the Governor received "false allegations" made against Plaintiff, Am. Compl. ¶¶ 6, 13, the only other specific

---

[17] To the extent such a private cause of action existed, these claims should still be dismissed for the same reasons that the Section 1983 and MCRA claims fail.  *See* section III.A. and B., *supra*.

references identifying the Governor are allegations that the Governor (1) appointed Plaintiff;[18] (2) "had the authority to hire and fire the plaintiff"; and (3) "vowed to investigate the plaintiff." *Id.* at ¶¶ 14, 25, 31.  Plaintiff does not specifically allege that the Governor was involved in any actions related to the disavowal of Kappa Gamma, or that the Governor participated in the investigation or termination of Plaintiff.  *Id.* at ¶¶ 54, 66, 67, 69, 80, 89, 99, 112; *see also* Exhibit 1.  Significantly, the alleged wrongful conduct, which is repeated verbatim in each Count, is specifically ascribed to Defendants Sudders, Starr and Crystal in Count 4, not the Governor.  *Id.* at ¶ 105.  Accordingly, Plaintiff has failed to meet his burden of plausibly suggesting that he has any claims against the Governor and all should be dismissed.  *See Pollard*, 132 F. Supp. 3d at 229 (dismissing 1983 and MCRA due process claims where plaintiff failed to allege factual allegations specific to each individual defendant, noting "a plaintiff must offer more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and generalized references to "defendants" is not enough) (internal quotations and citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims.

---

[18] This is incorrect as a matter of statute.  M.G.L. c. 6, § 193 ("The secretary of health and human services shall appoint, with the approval of the governor, the commissioner.").

COMMONWEALTH OF MASSACHUSETTS;
GOVERNOR CHARLES E. BAKER, individually
and in his official capacity; MARYLOU
SUDDERS, individually and in her capacity as
Secretary of Health and Human Services;
CATHERINE STARR, individually and in her
capacity as Secretariat Human Resources Officer;
and ERICA CRYSTAL, individually and in her
capacity as Executive Office of Health and Human
Services Labor Relations Director and Deputy
General Counsel for the Commonwealth of
Massachusetts,

By their Attorney,

MAURA HEALEY
ATTORNEY GENERAL


 */s/ Kendra Kinscherf*
Kendra Kinscherf, BBO # 670472
Eric A. Martignetti, BBO # 678377
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, 18th Floor
Boston, MA 02108
kendra.kinscherf@mass.gov
(617) 727-2200, ext. 2888
eric.martignetti@mass.gov
(617) 727-2200, ext. 2314


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent
electronically to the registered participants as identified in the Notice of Electronic Filing (NEF)
and copies were sent by first-class mail to those indicated as non-registered participants on
August 13, 2021.


 */s/ Eric A. Martignetti*
Eric A. Martignetti